Thank you, Ms. Doan. Thank you, Your Honor. May it please the Court? Counsel. Jennifer Doan with Haltman Doan in Texarkana on behalf of the Appellant Suzan Taylor, the defendant in the trial court. We're here today because the trial court's erroneous construction of an insurance application question allowed Hiscox to wrongfully terminate this policy and wrongfully rescind the policy based on information that they may have liked to have had, but they did not ask about. Under the facts of this case, the holding of this case, this precedent cannot stand in the Eighth Circuit. Unlike the cases that have been cited to us by the appellee, here we have over a decade in policies that have been written on behalf of Ms. Taylor by Hiscox, the plaintiff here, the appellee here with the plaintiff in the undercourt, Lloyds of London, and their agent Burns and Wilcox. In fact, there's over five policies on this house, the house that burned 654 Springwood and Hot Springs, Arkansas. There's over five policies over a period of five years written by Hiscox and Burns and Wilcox to Ms. Taylor. Does that fact affect our interpretation of the key element that the district court relied on here, or does that relate to some of the other alleged omissions? It does relate to the other omissions, but I think the context here, Your Honor, is important to understand exactly why we're dealing with this, because there is no question here that there was no foreclosure. There's nothing about the fact that there are five other policies that go directly to the contractual interpretation of the term had a foreclosure, but it's important understanding the context of the relationship to this. Well, you might flip it on it on the other side, too, and say that these multiple material omissions made in this application provide some context, suggesting, perhaps, that your client knew, and this was one in a long line of material omissions that were made during the application. Well, we would contend that they're alleged material omissions, yes, sure, and that the trial court actually had a finding of, and it's a little bit different burden of standard of review that we're dealing with here, the trial court, with respect to the other four omissions that we, as the appellant, are not moving on by, understand that they have raised that as an issue in this case. The trial court made a finding that, because they knew that there had been such a long relationship, and indeed, despite the evidence that they, that Hiscott put forth, they indeed did know about these different representations of what had happened on these other policies, since they wrote these policies. Wait, wait, you said finding? Who made the findings? Judge Dawson, and... Well, this, this is not, there was no trial here, right? No, there was a factual finding that he made with respect to the other four allegations, not the one with respect to, that we're dealing with, with the construction. You don't make findings at the summary judgment stage. Well, he made a, he, he said that there was a finding that there may be, there may be, that there may be additional facts with respect to. That was not the basis on which the case was decided. It was not. He said it didn't matter. That finding was immaterial, because he... Oh, so it does matter. Yes, so he, because he had already ruled on the issue that I'm bringing forth first today. That might be something that could be explored if we remand or something, but it's... Exactly. It doesn't seem to me it's particularly central to the case at the moment. Exactly. Yes, Your Honor. With respect to the relationship of the parties, though, and the fact that they had gone on for so long, this is, it gives color to the argument that there had been in multiple other policies, and this is important here, because even, she's never missed a premium for over a decade on any of these policies, and yet, when she, when she has the, the time that she needs this policy the most, and her house burns to the ground, what does... Wait, the house hadn't burned at the time she filled out the application. No, they did not burn. Let's, let's stay realistic. But when she did make a claim, that is when they came back and said that you made a material misrepresentation. Did they know before then? She has never had a foreclosure. That is what they deny the policy under, Your Honor. Yeah, you just begged the question, of course, of what had a foreclosure means. Exactly. Unlike her agent who testified on cross-examination, that of course I would have disclosed that, the fact that she not only had a notice of foreclosure, there was a sheriff's sale, pending sheriff's sale, scheduled on the day she signed that application. She, she received a notice of default. It's slightly different, Your Honor. I mean, the name of the, the name of the document... I saw a reference in the briefs that there was a sheriff's scale sale scheduled. Now, it may have been scheduled in the notice of default, but there was a date certain for a sheriff's sale, right? There's a date certain if other things didn't happen between. There is a date certain if things didn't happen in between. The vernacular is important here because Hiscoff is calling it a notice of default. You know, I don't think vernacular is important to people. Well, it's important... I, you know, I read that, I read that cross-examination. I thought that's right. I can't imagine there's a person with common sense in the world that would not have disclosed that pending, that pending foreclosure proceeding in response to that question. Isn't that relevant to this case? The issue is not did the insurance company want to know the information. The issue here is what question... No, the issue is what would an honest insured have done? What question was asked? And the evidence in this case under the underlying facts show that when she received the notice of default in the mail, she knew it was an error immediately. She called her lawyers that dealt with all of her other business. It wasn't... It was an error that she hadn't paid interest for six months? Her testimony, Your Honor, is that she had been withholding payments, that it was an error on the notice of default, and that she cured that. She cured it shortly thereafter. Oh, you mean she hadn't refused to pay, she'd just been withholding payments. I think there was a dispute between Citibank and Ms. Taylor on other issues. That's fine, but the insurer never would have issued the policy if it had known any of that. But the insurer, the question they asked was, has the applicant had a foreclosure, a repossession, a bankruptcy, or filed for bankruptcy? And the context of that question... This would be a good argument in the first-year law school class, but I don't think Arkansas law makes it the relevant question here. It does make it the relevant question because... In a statute like the Tennessee statute in... In the Buford case? In... Buford, yes. Yes. So the statute here is a little bit different, Your Honor. The statute that defines, it doesn't define foreclosure, but the Arkansas statute is, and it's 1850.114a, where it defines notice of default. Oh, I saw that. Which she did receive a notice of default, but that was not the question that was asked, Your Honor. That doesn't begin to answer this issue. Yes. The difference is in Arkansas law, you can cure a default, but you cannot cure a foreclosure. That's clear under... So what? Because the question... It doesn't affect materiality to insure. The question that she has asked for the insured, that the insured is asking is, has the applicant had a foreclosure? It's past tense. Isn't this... Is it true this is an ISO policy form? It's an accord policy form. I'm not sure if there's... Is the application was an accord application? It is the... I know what ISO policies are. What's an accord policy? I'm not sure what... Insurance services organization that publishes policy forms for insurers nationwide. So it may be in the actual insurance policy, but the applications here we're talking about, it's an accord, A-C-O-R-D form. It's a company that puts out forms. This form under Hiscox Underwriting Policies is the form that they had approved. So they did this... Approved by whom? By Hiscox, that they have to have the accord insurance application, a form issued by accord. So with that respect, they actually do approve the questions that are here. There's no doubt that Ms. Taylor did not approve the questions that were asked here. So why hasn't it been... Why hasn't it been litigated more if it's nationwide policy form that insurers are offered the benefit of using if they find it appropriate? This policy may have been litigated. It looks like in Buford, as you mentioned, the policy application was... Well, the issue there, first of all, Your Honor... Did you look whether elsewhere in the nation it's been litigated? Yes, we have looked and seen... This question, I believe, has not been looked at specifically as the question three is phrased here in the application. Under Buford, and this is pivotal, Your Honor... Under Buford, it's unpublished. It's a Tennessee District Court. But the issue in Buford was these contrary affidavits, conflicting affidavits between the insured and the insured's agent and who said what. That is not the issue here. But if you look at the question in Buford, it was... Has the applicant had a foreclosure, a repossession, a bankruptcy, a judgment, or a lien? It's a 2007 application that... This is a 2013, and the question had changed. It's not had a foreclosure, repossession, bankruptcy, judgment, or lien. Now it's had a foreclosure, repossession, bankruptcy, or filed for bankruptcy. That's the question that she got. That question she answered is a plain question, and she answered it accurately. There's no dispute here. It's the insertion of the filed for bankruptcy? The filed for bankruptcy is the question that Ms. Taylor received. That was not the question in Buford. In the question itself, they're asking, have you had a bankruptcy or filed for bankruptcy? Here, if what Hiscox wanted to know is, did you receive a notice of default? Have you had a foreclosure? Have you received any type of foreclosure proceedings or a notice of default? They could have asked that. They didn't ask that. So if filed for bankruptcy was not an issue in this application, your client would lose? If she had filed for bankruptcy, she would lose. Yes. If the question was, have you received— If there had been an involuntary filing a petition against her under this language, now you're arguing she wouldn't lose because it was limited to filed for bankruptcy or what? This digression into bankruptcy language, I didn't understand in the briefs. I thought it was irrelevant. Well, let me explain things. We think it's really important here. If the question is, have you had a bankruptcy or even filed for bankruptcy, which is question number three in their application, and then you ask, have you had a foreclosure? No. You don't ask me, is one pending? Has somebody sent you a notice of intent to sale? The argument, as I take it, is because you asked about filed for bankruptcy, the implication is that you're not asking about filed for foreclosure? That is the argument here. If you look at question eight in the same application, they ask not only, have you been convicted of certain crimes, but have you been indicted for those crimes? They want to know, not just have you been convicted, but have you been indicted? The insurance company here wanted to know, not only have you had a bankruptcy, but have you filed a bankruptcy? But they might have wanted to know, have you received a notice of default? Does had a bankruptcy, in your view, include an involuntary petition filed? Not on had a bankruptcy. Had a bankruptcy is where the bankruptcy is completed. Just like under Arkansas law, the foreclosure is defined to be, under the statute, termination of sale. So the insured wins, in your view, if the most material adverse circumstances were there. That is, a creditor had involuntarily filed. The insurer wins only if the insured had petitioned, filed a voluntary petition for bankruptcy, which is often just a debtor relief or avoidance practice. Well, I think that question could be asked under the application, Your Honor. But the question is, has the applicant, have I filed for bankruptcy, is what they're asking. It seems to me that at some point we need to talk about at least the possibility that this phrase is ambiguous, in which case you win, in the sense that the ambiguity goes to the insured. Yes, Your Honor. So, I mean, it seems to me that's an important principle in this case. It is. And I also want to call everyone's attention to a case that I found. It's called Providence Bank against Tennessee, something or other, which is 234F Appendix 393. It's a Sixth Circuit case, which holds that something very much like this very same phrase does create an ambiguity, in which case the question is, I guess the Arkansas law is, at that point you ask whether there's any extrinsic evidence, parole evidence that can be introduced to explain away the ambiguity. And then if there isn't, it's a judge question as to the meaning. And at that point, the judge applies a presumption against the draftsman or the person who is relying on the language, and the insured wins. I mean, isn't that the way it works? That is the way it should work. I mean, that's important. It is important. Here under the Deal case, which is the Arkansas Court of Appeals case, the Drummond case, which is an Arkansas Supreme Court case, the Farm Bureau v. Milburn case, all mistake when there's any doubt or uncertainty as to the meaning. And the meaning of this question has two reasonable interpretations. There's no doubt here it has two reasonable interpretations here. Under Arkansas law. It seems to me that the district court is saying that his interpretation of the words was obvious. It seems to me that's overstating itself. It's not obvious to me. Yeah, and he can't. That's what he did wrong here. There were two different interpretations. One is, does had a foreclosure mean past tense, there has been a foreclosure? Or does had a foreclosure mean, did I receive a notice of default? The competing principle is the fact that the two lay people disagree as to the meaning of a statute that raises an issue of law, whether that creates the kind of ambiguity that triggers ensured wins. Well, that does. There are many cases that say no. If it's just two people disagreeing over a statute that has a clear meaning. And there may be a disagreement with another statute where one position is not reasonable. But here they're both reasonable. And what did the trial judge do? He tried to weigh them. You're saying that I don't think they're both reasonable. That has to be your position. They are both reasonable here. Because it is, they are both reasonable. It's either that she answered the question accurately and unambiguously that she had not had a foreclosure because indeed facts show she's never had a foreclosure and she owns this property today. Or the question's ambiguous because it's subject to two reasonable interpretations. Here what the trial court did is he tried to weigh those interpretations and he held in favor of the insurance company. That's against Arkansas law. He does not have the discretion to weigh the two. Instead, he has to send that back to the jury for a fact issue. I know I'm back into my rebuttal time, Your Honor. Unless there's any additional questions, I'll reserve the rest of my time for rebuttal. Thank you. Thank you. The case has been thoroughly briefed. Mr. Sterling. May it please the court. Your Honors, this is a simple case and I think Judge Loken drilled down to it pretty quick. The deciding issue here is whether a reasonably honest insured, faced with the question whether you have had a foreclosure in the last five years, would disclose that there was foreclosure proceedings currently pending on the property to be insured and a sale of the property scheduled on the courthouse steps two months later, April 11, 2018. In common parlance, we say a home is in foreclosure. What that means to me, and I think the general understanding of the word, is that in foreclosure means it's in the process of being sold. But that's not what the question was. The question didn't. I'm sorry to interrupt, but in all fairness, counsel, that's not what the question was. The question was not, is the house in foreclosure? The question was, had there been a foreclosure? Have you had a foreclosure? That's right. The question was. That's not in a foreclosure. Well, I think it's the term foreclosure. You're right. The term is, or the question was, had a foreclosure. If they had asked that, it's an easy case. Well, I believe it is an easy case. You may believe that, and you're entitled to it. What I'm saying is if they had asked that, it would have been an easy case. But that's not what the question was. Had a foreclosure, and the common understanding is a foreclosure is a proceeding. So if you have. Well, do we go to a common understanding, or do we go to some Arkansas statutory provision or case law? And what is the best legal definition, setting aside for a minute, common understanding? Because common understanding can vary quite a bit. And I believe that can be right. If you look at the Arkansas power of sale foreclosure statute. So which one specifically? I mean, the problem I have here is I've got statutes all over the place. I've got blacks law definitions. I've got cases from out of state. I've got Arkansas statutes that seem to go in other directions. It's easy to find ambiguity when I look at the research I've done on this. So where is the clearest point where you can show me what a foreclosure means? I would point you to Arkansas statute 1850, 104, B4, and B7. And that statute is part of the foreclosure statutes. And it states what has to be in a notice of default and intention to sell. Is this the section that says the default for which foreclosure is made, and then goes on to talk about the party initiating a foreclosure? That's correct, Your Honor. And if you look at the statute before that, 103, it also indicates that a foreclosure begins at the initiation of the notice of default and intention to sell. And that notice of default and intention to sell was sent to the insured and it said this foreclosure has been initiated by. How about this case cited by your colleague that compares a foreclosure against a notice of default because a notice of default can be cured while a foreclosure cannot. Doesn't that suggest a distinction between a notice of default and foreclosure? I don't know that there's a case cited to that point. I think that's how they're trying to make an argument arising from the statutes. But I think the proper interpretation is foreclosure, definitionally, is a proceeding. A foreclosure leads to, and the object of a foreclosure is ultimately a sale. But a foreclosure, by definition, whether it's a judicial foreclosure, a statutory power of sale foreclosure like we had here, it is the proceeding. And the application question is had a foreclosure. That's broad. It's not ambiguous. The question, had a foreclosure, obviously seeks to have information about any foreclosure that the insureds had, whether or not it ended up in a sale. And going back to the application form for a minute, I know Judge Logan asked whether this was an ISO form. It was an accord form, which is much like ISO. It's another company that markets insurance forms. And this was not a form drafted by the insurer here. It's a form that's an industry standard form used across the nation. And it was selected by Ms. Taylor's actual agent. And she submitted that. That's a form that the insurer here accepts because it's an industry standard form. But it's not a situation where the insurer here drafted the specific questions like they talk about in the case law about if there's an ambiguity, it has to be construed against the insurer because the insurer drafted the policy. That's not the situation we have here. I'm sorry. This is a point I'm interested in. I'm sorry to interrupt. Wasn't this a form that was regularly used by the insurer? It was not drafted by the insurer, but regularly used by the insurer? That's correct. So the insurer is offering it. I mean, the insurer is relying on the form, whoever the draftsman was. And so the insurer is proffering this form as a defense, the answer to the form, as a defense to coverage. Isn't that correct? Yeah. Okay. I'm sorry. Go ahead. Well, the insurer certainly accepts the form. It says it in their guidelines that they accept accord forms or similar forms. So it's relying on it. Okay. Is this an independent agent? Yes. Ms. Taylor's agent, Nikki Hodges, was an independent agent. She was the agent of Ms. Taylor and not the agent of the insurer. This was an E&S policy, excess and surplus lines policy, that was issued outside of normal admitted markets. So she had her own independent agent, and underwriters had their own wholesale agent, Burns & Wilcox. Another thing I'd like to address is the talk about the bankruptcy in the question. I think it is kind of a red herring and irrelevant because bankruptcy and foreclosure are two different things. But the focus is on the had and the file, not necessarily on the nature of the bankruptcy. I mean, I guess bankruptcy, in a sense, is a process too, right? Like a foreclosure, maybe not identical, maybe not even similar. But there is a bankruptcy process and procedure you go through when you're in bankruptcy court. So why doesn't it follow that if the application said had or filed in this area, which is a process, I think, that it implies that they're not asking for that in the field of a foreclosure? Because it's intentionally broad, I believe. Foreclosure, by definition, is a proceeding. Well, so is bankruptcy. Bankruptcy may be definitely a proceeding, but not in the same way as a foreclosure. But it is a proceeding. Look at all the chapters. Some of them are voluntary, some are involuntary. That's very analogous. Well, it says filed for bankruptcy or had a bankruptcy, and I think... The difference is the voluntary, involuntary at bankruptcy. That's fairly unique. That's true. And if you say files for bankruptcy and leave it there, you haven't covered the more important half of the equation. That's right. And I think bankruptcy would pick that up. But I do think it's sort of an aside because if you look at had a foreclosure, because there's no bankruptcy here. Nobody's arguing that. But if you look at had a foreclosure, would a reasonably honest insured accept that to mean I need to disclose the foreclosure that's currently on this property. I'm asking the insurance company to insure. And from a pragmatic standpoint, of course that's what the insurer wants to know about because that increases the risk dramatically. What if the insured's lawyers had already told her that notice of default was going to be cured, that they had resolved the issue with the creditors and the issue was resolved? I mean, I don't know what the facts are here, but doesn't that change the average honest insured's position? It does not because the foreclosure would still need to be disclosed. You can explain that it's going to be taken care of, so you should still insure me. I've tendered a check or whatever. That's something that they would have the opportunity to explain in the application, but they would still need to disclose a foreclosure that they had within the last five years. And the fact that the bank initiated this foreclosure is certainly a foreclosure. There's evidence in the record that she had a lawyer that was negotiating with Citibank around the same time trying to pay off the, I think it was six months or so, of unpaid payments through endorsing over an insurance claim check from a fire she had the year before at an outbuilding. So, I'm sorry, finish your sentence. I'm done. I think this is a diversity case, right? Yes, Your Honor. So we're supposed to decide this case the same way the Supreme Court of Arkansas would decide it, correct? Yes, Your Honor. What's the general attitude of the Supreme Court of Arkansas toward these kinds of cases with respect to ambiguities in insurance contracts or application forms? Well, one thing is I think they look at the term in a reasonably holistic way and you don't look at extrinsic evidence to determine if there's an ambiguity. And what the district court found here was that this was an unambiguous term, or at least it unambiguously required the insurer to disclose the pending foreclosure and foreclosure scales. I guess what I'm thinking is in reviewing the cases of the Supreme Court of Arkansas, are they reasonably open to the notion that language is ambiguous in these kinds of insurance contracts? Well, I think most of the cases that have been cited here at least tend to deal with construing policy language, which is a little bit different. I don't know that there's been an Arkansas Supreme Court case that directly addresses the application issue. Yeah, I think that's right. I was asking more about, it was kind of an ethos question. What's the sort of general superintending attitude in Arkansas courts about this kind of case? Since we're supposed to come out the way they would, right? That's our job. Your Honor, yes. And I believe the Arkansas courts look at and interpret words using their reasonable interpretation. It's pretty consistent with what courts do across the nation. Well, there are other states in our circuit where the Supreme Court has said, we don't much like defined ambiguity. I think that they created a semi-quasi-presumption against ambiguity. That's the ethos I think Judge Arnold was asking about. And the Arkansas courts do say just because there's two arguments as to the meaning of a term does not make it ambiguous. That's not the definition of ambiguity, and you can't look at extrinsic evidence to determine ambiguity. The court decides whether it's ambiguous as a matter of law, and it looks at the reasonable interpretations that way. Not just whether there are two arguments or not. One thing I did want to mention before my time is up is that there's no issue of materiality here. Of course, the insurer would not have issued the policy had this foreclosure been disclosed. Because it's a straight decline under the guidelines, because it increases the risks so much. I want to note that there's no issue there. We do make arguments that there are lots of misrepresentations in this application. There are many alternative reasons to affirm. One I would point to is the Deer Credit Judgment. There's no issue about any prior notice, even if that was a legal... I'm sorry, there's no issue about what? About whether the insurer knew about it with prior policies like some of the other arguments with the other misrepresentations. We don't believe that's a solid argument, but I wanted to point out there's no issue with regard to that $100,000. It has to do with whether she had a judgment. That's correct. That's another difficulty, but the district court adverted to that but didn't decide it. That's correct, Your Honor. Thank you. Thank you. Ms. Doan, you've used your time. If you want to respond to Judge Arnold's ethos question, I'd like to hear that. Otherwise, we'll take the case as submitted. Yes, Your Honor. And wait until the wipe-down. Your Honor, briefly in response, and I believe I understand, Judge Arnold, your question with respect to the ethos and what Arkansas law calls for. The Arkansas law, whether it's the Deal case, the Drummond case, the U.S. Fidelity and Guarantee case, they're all set forth in our briefing. If there are two reasonable interpretations before the court as to what this means, then they are obligated to go with the insured. In fact, the case law says it is their duty to go with the insured. At best for the insurance company here, this is an ambiguous case, because it is their duty of the court then to go with the insured. That's not the question. As I stated, other Supreme Courts in the circuit express great reluctance to find ambiguity. That's what I interpreted the ethos. Yes. How ready are they to say this is ambiguous? I mean, I've written before that the notion of ambiguity is itself a little fuzzy around the edges, isn't it? It's, you know, so my question, I think Judge Zoltan put it exactly right. How quick are they to say, yeah, this has two meanings, and maybe it's ambiguous as to whether it's ambiguous, but, yeah, it's ambiguous, and let's go with that. What's the ethos, the general attitude of the courts to the idea? Of finding an ambiguity? Yes. There are multiple cases that we've cited to you that they do find the ambiguity, but the Arkansas case. We know that. Yes, but the court also says the duty, if there are two reasonable interpretations, the duty is to go with the insured. Yes, but the question is when are there two reasonable interpretations? Yes. And some courts have expressed a greater or lesser willingness to do the classroom lawyer thing of everything's, but everything's ambiguous if you look at it hard enough. So I'm trying to answer the question, Your Honor. I think I am. I'm trying to make sure we don't speak against each other, but. If you had some language, that would help. Sure. From a case. The Deal case, which is an Arkansas Court of Appeals case, the Drummond case, which is an Arkansas Supreme Court, and the Farm Buol Mutual case versus Milburn say when any doubt or uncertainty as the meaning, and they're fairly susceptible, fairly susceptible to two or more reasonable interpretations, one favorable to the insured and one not favorable, their duty, the one favorable will be adopted. So that is the way they get out of saying that it's ambiguous because they go with the insured. Here they went with the insurer. Thank you. Thank you, Your Honor. There's only one other thing that I wanted to answer with respect to your question, Judge Loken. All right. You had asked about the accord policy, and I didn't know. No, I don't want to. No. Okay. That's not in the record anyway. It is in the record, Your Honor. All right. Give me a cite to the record. The appendix 1193 says under the underwriting guidelines for Hiscox, they have to use the accord application form or similar. Thank you. Thank you, Your Honor. Thank you. The case has been thoroughly briefed and well argued, and we'll take it under advisement.